## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| EP LIQUIDATION, LLC, | : | Case No.: 14-10359 (CSS) |
| | : | |
| _____Debtor._____ | : | |
| CHARLES A. STANZIALE, JR., solely | : | |
| in his capacity as the Chapter 7 Trustee | : | |
| of EP Liquidation, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Proc. No. : 16-50080 (CSS) |
| | : | |
| Richards, Layton & Finger, P.A. | : | |
| | : | **Related Adv. D.I. 27 and 29** |
| _____Defendant._____ | : | |

## OPINION[1]

| | |
|---|---|
| **BILLION LAW** | **RICHARDS LAYTON & FINGER, P.A.** |
| Mark M. Billion | Marcos A. Ramos |
| 922 New Road, 2nd Floor | Joseph C. Barsalona II |
| Wilmington, DE  19805 | One Rodney Square |
| -and- | 920 North King Street |
| **FORMAN HOLT ELIADES &** | Wilmington, DE  19801 |
| **YOUNGMAN LLC** | |
| Erin J. Kennedy | Counsel to Richards, Layton |
| 80 Route 4 East, Suite 290 | & Finger, P.A. |
| Paramus, NJ 07652 | |
| | |
| Proposed Special Counsel for the | |
| Chapter 7 Trustee | |

Dated: April 9, 2018
Sontchi, J.

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12…" Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## INTRODUCTION

Richards Layton & Finger, P.A. ("RLF" or the "Defendant") was pre-petition counsel to the Debtor and eventually prepared the Debtor for its Chapter 7 filing. Thereafter, the Chapter 7 Trustee filed the above captioned adversary action against RLF for all the payments (five in total) made to RLF prior to the Petition Date.  The transfers to RLF were for a contemplated Chapter 11 filing, for legal services related to a sale of the Debtor's assets *prior* the Petition Date pursuant to an Asset Purchase Agreement ("APA"), and a Chapter 7 Retainer related to the preparation of the Debtor for relief under Chapter 7, including the schedules, statements of financial affairs, and preparation for the 341 meeting of creditors.

The Original Complaint asserted five causes of action against RLF under various theories and included all five transfers made from the Debtor to RLF (each a "Payment" and collectively, the "Payments").  Subsequently, and after informal discovery, the Trustee and RLF entered into a Stipulation of Dismissal *with prejudice* for each count in the Original Complaint other than Count IV, asserted pursuant to Sections 105 and 329 of the Bankruptcy Code, which states:

> Given the Defendant received a Chapter 11 Retainer of $100,000 and subsequently received another $242,105.91 in the ninety days prior to the Petition Date, the Chapter 7 Retainer is excessive.

Thus, after the Stipulation of Dismissal only one Payment for $75,000 (the "Chapter 7 Retainer") was at issue between the parties.

2

Approximately thirteen months *after* the Stipulation of Dismissal, the Trustee filed a *Motion to File an Amended Complaint* (the "Motion to Amend") and RLF filed a *Motion for Judgment on the Pleadings* (and opposition to the Motion to Amend) (the "Motion for Judgement on the Pleadings").

The Motion to Amend contemplates adding back the four Payments made to RLF under the theories set forth in Count IV of the Original Complaint (Sections 105 and 329 of the Bankruptcy Code), as well as two other counts discussed below.  RLF objects because such transfers were subject of the Original Complaint, were dismissed voluntarily with prejudice, and asserts that amending the Complaint now to include such transfers would be futile, in bad faith, unduly prejudicial to RLF, and also asserts there was an undue delay in the Trustee bringing such amendments.

In the Motion for Judgment on the Pleadings, RLF asserts that the Trustee does not have standing to assert the cause of action for return of the Chapter 7 Retainer because such funds were designated in the APA as the Purchaser's funds, and would be returned to the Purchaser and not the Debtor's estate.

Both motions are fully briefed and the Court heard oral argument on October 31, 2017.  After the Court heard argument on the motions, the Court took these matters under advisement.  This is the Court's decision thereon.

## BACKGROUND

### A. Background of Bankruptcy Cases

The Debtor, who was also known as Equinox Payments, LLC, was formed as a Delaware limited liability company in July 2011 as HYI Acquisition, LLC to facilitate the purchase of the majority of assets owned by Hypercom Corporation which was in the business of electronic payment solutions or electronic point of sale business.  The Debtor was a point-of-sale terminal manufacturer.  However, in 2014, the technology used by the Debtor in its products was scheduled to fall out of compliance with the Payment Card Industry Date Security Standard.  Although the Debtor was developing new products, it was determined in April of 2014 that the incomplete certification process would delay revenue to the Debtor by at least twelve months.

Therefore in December 2013, Equinox Payments, LLC and certain of its subsidiaries retained RLF in connection the companies' possible chapter 11 bankruptcy filing.  On February 6, 2014, the Debtor sold substantially all of its assets and business operations including certain equity ownership interests in SIA Equinox Payments Latvia and Netset Americas Centro Servicios, S. de R.I. de C. V., and the right to use its name to Brookfield Equinox, LLC pursuant to an Asset Purchase Agreement.

On February 24, 2014, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  Charles A. Stanziale, Jr. (the "Trustee") was appointed as the Trustee in the Debtor's Chapter 7 case.

4

**B.  Procedural History of Adversary Proceeding**

The Trustee filed this complaint on February 24, 2016 (the "Original Complaint").[2] The Original Complaint contained four counts: (i) a claim to avoid and recover preferential payments made to RLF pursuant to section 547; (ii) a claim for constructive fraudulent transfer pursuant to section 548(a)(1)(B) of the Bankruptcy Code, under which the Trustee sought to recover each payment received by RLF (the "Fraudulent Transfer Claims"); (iii) an excessive payment claim pursuant to section 329 of the Bankruptcy Code, under which the Trustee sought to recover the $75,000 Chapter 7 Retainer (the "Section 329 Claim"); and (iv) an unjust enrichment claim, under which the Trustee sought to recover each Payment received by RLF (the "Unjust Enrichment Claims").  The Trustee also included a claim under section 550 of the Bankruptcy Code to recover each of the Payments received by RLF.

Thereafter, on April 27, 2016, the parties entered into a *Stipulation of Dismissal of Certain Claims* (the "Stipulation of Dismissal"), as discussed in more detail below, which dismissed, *with prejudice*, all of the claims to recover the Payments, other than the Trustee's claim to recover some or all of the Chapter 7 Retainer pursuant to Section 329.[3]

---

[2]  Adv. D.I. 1. Docket items in adversary action referred to herein as "Adv. D.I. #" and docket items from the main case referred to herein as "Bankr. D.I. #."

[3]  Adv. D.I. 9.

After a failed mediation and a status conference with the Court, on March 27, 2017, the Trustee filed his *Motion to File an Amended Complaint*, which attached the proposed amended complaint (the "Motion to Amend" and the "Amended Complaint").[4]

The proposed Amended Complaint includes three counts: (i) the Trustee renews his attempt to recover each Payment made to RLF under Section 329 (the "Amended 329 Claims); (ii) the Trustee alleges that each Payment should have been, but was not listed in the 2016(b) Statement (the "2016 Claim"); and (iii) the Trustee alleges that RLF was owed approximately $8,000 at the conclusion of its pre-Chapter 7 representation of the Debtor, and further alleges that RLF therefore should have been identified as a creditor to EP (the "Creditor Claim").

Thereafter, RLF filed a *Motion for Judgment on the Pleadings* (the "Motion for Judgement on the Pleadings") and its opposition to the Trustee's Motion to Amend.[5] Both motions have been fully briefed and are ripe for the Court's consideration.  The Court held oral argument on these motions on October 31, 2017.

### C.  Factual Background Related to Adversary Proceeding

#### i.   *RLF's Engagement and Payments to RLF*

Equinox Partners, LLC ("EP" or the "Debtor") was engaged in the business of providing payment terminals and related technologies, applications, and services in the United States and Canada.

---

[4]  Adv. D.I. 27.

[5]  Adv. D.I. 29 and 30.

EP retained RLF on or about December 18, 2013, to prove legal services to EP in connection with EP's financial difficulties and its initial planning for a potential Chapter 11 case under title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware.

After RLF's engagement, EP determined to proceed with an out-of-court sale and not a Chapter 11 case, and RLF provided services to EP in connection with that sale and related activities.  RLF received a $100,000 retainer in connection with this engagement (the "Initial Retainer") and three additional retainer amounts (collectively with the Initial Retainer, the "Initial Engagement Payments").

EP determined to file a voluntary petition under Chapter 7 of the Bankruptcy Code after the sale of substantially all of its assets.  RLF was retained by EP pursuant to a supplemental engagement letter, dated February 12, 2014 (the "Supplemental Engagement Letter"), in connection with Chapter 7 filing.  As set forth in the Supplemental Engagement Letter, RLF agreed to act as Chapter 7 counsel for the Debtor including through the section 341 meeting of creditors (the "341 Meeting") and for a capped $75,000 fee (the "Chapter 7 Retainer," and with the Initial Engagement Payments, the "Payments").

### ii.    Sale of EP's Assets

On February 6, 2014, EP sold (the "Sale") substantially all of its assets to Brookfield Equinox, LLC (the "Purchaser"), pursuant to an Asset Purchase Agreement (the "APA").

No cash or cash equivalents were paid to EP at the closing of the Sale.  Instead, the consideration for the Sale included: (a) the Purchaser's assumption of a significant amount of liabilities and certain payables; and (b) $8,430,355.00 paid by the Purchaser to PNC Bank, N.A. ("PNC" or "PNC Bank"), EP's secured lender, to fully satisfy EP's revolving credit facility, inclusive of certain post-closing obligations of EP in connection with the Chapter 7 filing.

All cash and cash equivalents owned by EP were "Purchased Assets" under the APA, except one bank account defined as the "Excluded Bank Account."  The Excluded Bank Account was specifically identified as that certain bank account located at PNC in the name of EP and identified by account number 80-22659-4405.[6]

The APA provided for certain of EP's post-closing obligations including in connection with a Chapter 7 filing.  Those estimated payments were governed by Section 6.12 of the APA and itemized in Schedule 6.12 of the APA (the "Cash Burndown Schedule").  Under Section 6.12, both EP and Purchaser "acknowledge[d] that some or all of the post-Closing payments set forth in the Cash Burndown Schedule will be funded with the available proceeds under [EP's] existing credit facility with [PNC], and that [Purchaser] has agreed to assume limited liability to PNC for the amount advanced for such post-Closing obligations."[7]  Further, all items listed on the Cash Burndown Schedule "will be deemed 'net debt' assumed by [Purchaser], payable to PNC (the "PNC Net

---

[6]  APA Art. I, p. 5.

[7]  APA § 6.12, p. 49.

Debt")" and "any underpayment of items set forth in the Cash Burndown Schedule that constitute PNC Net Debt shall be deemed a Purchased Asset."[8]

The Cash Burndown Schedule sets forth the estimated payments, as of the Closing Date, to be made by EP following the Closing Date.[9]   Among other things, the Cash Burndown Schedule specifically identified and provided for the payment of the $75,000 Chapter 7 Retainer.[10]

### iii.    EP's Chapter 7 Case

The Debtor filed its Chapter 7 case on February 24, 2014.  Charles A. Stanziale, Jr. (the "Trustee") was appointed as the Chapter 7 trustee of the Debtor's estate on that same date.

As contemplated by the Supplemental Engagement Letter, RLF assisted the Debtor with its preparation and filing of the Debtor's petition, Schedules of Assets and Liabilities (the "Schedules"), the original Statement of Financial Affairs (the "SOFA"), amended Schedules and amended SOFA, and the Debtor's appearance at the 341 Meeting.[11] Although the Supplemental Engagement Letter only contemplated services through the 341 Meeting, RLF continued to provide services to the Debtor and/or the Trustee at his

---

[8]  APA § 6.12, pp. 49-50.

[9]  APA Schedule 6.12.

[10]  APA Schedule 6.12 (providing for $75,000 as "Professional fees for filing").

[11]  *See* D.I. 1, 8, 9, 35 and 37.

request, including turn-over of 2,800 documents and responding to communications from the Trustee and his counsel.

RLF also filed its *Disclosure of Compensation of Attorney for Debtor*[12] (the "2016(b) Statement") in the Debtor's bankruptcy case, identifying compensation it received (the Chapter 7 Retainer) in connection with the Chapter 7 Case. Also, each of the Payments was disclosed in the original SOFA and the amended SOFA.[13] RLF was not listed as a creditor in the Debtor's Schedules nor did RLF file a proof of claim in the Debtor's case.

## ANALYSIS

### A. Parties' Arguments

Both the Motion to Amend and the Motion for Judgment on the Pleadings are interrelated. First, RLF asserts that the Leave to Amend should be denied because the proposed amendment is futile as the Stipulation of Dismissal bars the Trustee's claims and the Trustee has not demonstrated standing to pursue to the proposed claims under the Amended Complaint because such funds, if returned, would not be property of the estate. RLF continues that Section 329 incorporates a "reasonableness" standard and that the Amended Complaint is devoid of any non-conclusory allegations regarding RLF and the services provided to the Debtors. Furthermore, neither the 2016(b) Claim nor the Creditor Claim support an independent cause of action, the proposed amended prejudices RLF, and the proposed amendments are unduly delayed. Second, RLF asserts

---

[12] D.I. 2.

[13] *See* D.I. 9 (p. 8) and 37 (p. 6).

that Judgment on the Pleadings should be entered for RLF because the Trustee cannot recover non-estate property because the $75,000 Chapter 7 Retainer would not have been property of the estate if it was not paid to RLF.

The Trustee responded that the counts dismissed in the Stipulation of Dismissal were asserted under Sections 544, 547, 548 and 550; but the count seeking relief under Section 329 was not dismissed. The Trustee asserts that the proposed amendments in the Amended Complaint seek reasonableness review of all fees paid to the RLF in the year prior to bankruptcy pursuant to Section 329, the section preserved after the Stipulation of Dismissal. Thus, the Trustee asserts that the proposed amendments are not futile. The Trustee continues that the Motion to Amend was filed before formal discovery and before a trial date was scheduled, thus, the Trustee asserts that there was no undue delay in bringing the Motion to Amend. The Trustee continues that the proposed amendments set forth in the Amended Complaint are not barred by the Stipulation of Dismissal nor are they governed by Section 6.12 of the APA, and thus, the amendments are not barred by bad faith.

In response to the Motion to Judgment on the Pleadings, the Trustee asserts that the Chapter 7 Retainer would have been property of the Debtor's estate of it has not been paid to RLF. The Trustee continues that Rule 2017 provides for the Court to determine if the debtor's payment to an attorney is excessive, it does not require that the party in interest be the direct beneficiary of the return of the excess payment. Thus, the Trustee

asserts that it does not matter if the Debtor is the beneficiary of the return of the return of the Chapter 7 Retainer.

RLF replies reiterating that the APA specifically carves out the Chapter 7 Retainer from being property of the estate, and as a result the Trustee does not have standing to pursue the return of the funds.  RLF also argues that the Trustee did not meet his pleading requirements by not alleging the (alleged) excessive services or the (alleged) excessive amount of the Chapter 7 Retainer.  RLF asserts that the Trustee knew about each payment form the Debtor to RLF, that each of those payments were identified in the Original Complaint and the Amended Complaint identifies the same payments, thus, the Trustee knew about all payments made to RLF.

## B.  Motion for Leave to Amend the Complaint

### i.    Standard of Review

Federal Rule of Civil Procedure 15(a), made applicable to this proceeding by Fed. R. Bankr. P. 7015, provides that a court should "freely give leave [to amend a pleading] when justice so requires."[14]  The decision to grant a motion for leave to amend is within the "sound discretion" of the . . . court.[15]  "Courts have shown a strong liberality . . . in allowing amendments."[16]

---

[14] Fed.R.Civ.P. 15(a).

[15] *Winer Family Trust v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007); *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 518-19 (3d Cir. 1988) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[16] *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984); *see also Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings should be liberally granted."); *Adams v.*

In *Foman v. Davis*, the leading Supreme Court case reflecting this liberal standard,[17]

the Supreme Court held:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or a dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be freely given.[18]

"Third Circuit courts have extrapolated five instances in which a court may deny

leave to amend a complaint: (1) if delay in seeking amendment is undue; (2) if delay in

seeking amendment is prejudicial to the opposing party; (3) if delay in

seeking amendment is motivated by bad faith; (4) if the amendment is futile in that it fails to state

a claim for which relief can be granted; or (5) if the movant does not provide a drafted

amended complaint."[19]

While the existence of any one of those factors can warrant a denial of a motion to

amend, courts in the Third Circuit have repeatedly stated, "prejudice to the non-moving

party is the touchstone for the denial of an amendment."[20] "In the absence of substantial

or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly

---

*Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984) ("Fed.R.Civ.P. 15 embodies the liberal pleading philosophy of the federal rules.").

[17] *Mortgage Lenders Network USA, Inc. v. Wells Fargo Bank* (*In re Mortgage Lenders Network, USA, Inc.*), 395 B.R. 871, 876 (Bankr. D. Del. 2008).

[18] 371 U.S. 178, 182 (1962).

[19] *In re Mortgage Lenders Network, USA, Inc.*, 395 B.R. at 876 (citing *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272-73 (3d Cir. 2001)).

[20] *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir.1981).

undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment."[21]

*ii.      Parties' Arguments*

The Trustee seeks to amend the Complaint to review all fees paid to RLF in connection with or in contemplation of bankruptcy paid within one year prior to the petition.

RLF contends that the Stipulation of Dismissal with prejudice bars all claims other than the claim for $75,000 Chapter 7 Retainer sought under Section 329. RLF contends that the Trustee is barred by claim preclusion from seeking to revive his claims against the remaining Payments to RLF in connection with its services to the Debtors because such claims are barred by the Stipulation of Dismissal. RLF contends that the Trustee's amended claims to recover the additional $242,105 paid to RLF are based on the same facts and transactions identified under the claims earlier dismissed with prejudice. RLF contends that each of the Payments that the Trustee now seeks to include under his Amended 329 Claims was not only the subject of each dismissed claim under the Original Complaint, but also specifically discussed in the Trustee's Section 329 Claim as filed in the Original Complaint. RLF asserts that indeed the Trustee knew of these transfers before filing the Original Complaint. RLF contends that all the Payments were disclosed in the SOFAs filed by the Debtor. RLF continues that the amendments to the Original

---

[21] *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (citing *Heyl & Patterson Int'l Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981)).

Complaint prejudices RLF because RLF relied on the Stipulation of Dismissal when it filed its answer, when it completed mediation, and would significantly alter the matter in the dispute leading to additional discovery, motion practice and a (potential) trial. RLF asserts that the Leave to Amend also should be denied based on undue delay as these claims could have been brought much earlier in the proceedings, there is no justification for the delay of over thirteen months between the Original Complaint and the proposed Amended Complaint. Lastly, RLF contends that the Trustee is acting in bad faith in trying to reassert these claims after the Stipulation of Dismissal, after discovery, and after mediation.

In response, the Trustee asserts that Count IV of the Original Complaint, asserted under Sections 105 and 329 of the Bankruptcy Code, preserves all claims under Section 329, not just the Chapter 7 Retainer, and even though these additional amounts were asserted in the Original Complaint and then dismissed in the Stipulation of Dismissal, because the Trustee is now seeking their recovery under Section 105 and 329, that such assertions are not futile. Furthermore, the Trustee asserts that RLF will not be prejudiced by these amendments because RLF is aware of the payments it received prior to the bankruptcy and what services RLF rendered in consideration for that payment. The Trustee asserts that if RLF had properly disclosed the payments it received then there would not have been a delay (asserting that the Trustee did not know about all the payments made to RLF until RLF produced informal discovery). The Trustee also asserts

that the amended claims are not barred by bad faith since these claims would not be barred by Section 6.12 of the APA, plus the Trustee has made multiple attempts to resolve these claims.

### iii.    Discussion

The Original Complaint alleges $317,105.91 in transfers from the Trustee to RLF[22] and includes the date of each transfer.[23]   Furthermore, Exhibit A to the Original Complaint lists all the transfers made from the Debtor to RLF.[24]

It is wholly disingenuous for the Trustee to now assert that he did not have information about the transfers from the Debtor to RLF prior to informal discovery, as such transfers were included in the Original Complaint.  The Stipulation of Dismissal is also clear that all counts of the Original Complaint are dismissed *with prejudice* except for the claim related to the "Chapter 7 Retainer" pursuant to Sections 105 and 329, specifically defining and naming the specific Transfer at issue.  As the other transfers to RLF are noted in the Original Complaint yet were voluntarily dismissed by the Trustee, it seems unreasonable for the Trustee to revive those claims in an Amended Complaint.  In fact, Count IV of the Original Complaint states:

> Given the Defendant received a Chapter 11 Retainer of $100,000 and subsequently received another $242,105.91 in

---

[22] Adv. D.I. 1, ¶ 26.

[23]  Adv. D.I. 1, ¶¶ 19 and 23.

[24]  Adv. D.I. 1, Exh. A.

> the ninety days prior to the Petition Date, the **Chapter 7 Retainer** is excessive.[25]

To allow the Trustee to revive the other transfers after the Stipulation of Dismissal is an inequitable solution.

Those initial comments aside, the Court also finds that the Motion to Amend does not meet the standards for amending the Original Complaint as set forth below:

### a. Futility

The Court finds that the Trustee is barred from re-bringing these claims on the theory of claim preclusion, which would make the amendment futile.

Futility "means that the complaint, as amended, would fail to state a claim upon which relief could be granted."[26] "The standard for assessing futility is the 'same standard of legal sufficiency as applies under [Federal] Rule [of Civil Procedure] 12(b)(6).'"[27] Fed.R.Civ.P. 12(b)(6) is made applicable to this adversary proceeding by Fed.R.Bankr.P. 7012(b).[28]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'"[29] At this stage in the proceeding, it is not the question of "whether a plaintiff will ultimately

---

[25] Adv. D.I. 1, ¶ 62 (emphasis added).

[26] *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010) (citations omitted).

[27] *Id.* at 175 (citation omitted).

[28] *Joseph v. Frank (In re Troll Communications, LLC)*, 385 B.R. 110, 116 (Bankr. D. Del. 2008).

[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).

prevail but whether the claimant is entitled to offer evidence to support the claims."[30]

Since the *Twombly* and *Iqbal* decisions, "pleading standards have seemingly shifted from

simple notice pleading to a more heightened form of pleading."[31]  This new standard

requires "a plaintiff to plead more than the possibility of relief to survive a motion to

dismiss."[32]  It is insufficient to provide "threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements . . . ."[33]  Under the heightened standard,

a complaint "must contain either direct or indirect allegations respecting all the material

elements necessary to sustain recovery under some *viable* legal theory."[34]  The Court, in

order to determine whether a claim meets this requirement, must "draw on its judicial

experience and common sense."[35]  In *Fowler*, the Third Circuit articulated a two-part

analysis to be applied in evaluating a complaint.[36]  First, the court "must accept all of the

complaint's well-pleaded facts as true, but may disregard any legal conclusions."[37]

Second, the court must determine "whether the facts alleged in the complaint are

sufficient to show that the plaintiff has a 'plausible claim for relief.'"[38]

---

[30] *Scheuer v. Rhodes*, 416 U.S. 232, 236, *abrogated on other grounds by, Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982); *see also Rosener v. Majestic Mgmt., Inc. (In re OODC, LLC)*, 321 B.R. 128, 134 (Bankr. D. Del. 2005).

[31] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[32] *Id.*

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

[34] *Twombly*, 550 U.S. at 562.

[35] *In re USDigital, Inc.*, 443 B.R. 22, 34 (Bankr. D. Del. 2011).

[36] *Fowler v. UPMC Shadyside*, 578 F.3d at 210-11.

[37] *Id.*

[38] *Id.* at 211.

Here, the Amended Complaint would be futile due to claim preclusion.  The Court

has previously held that, fundamentally, "[t]he essence of *res judicata*, or claim preclusion,

is 'that a party who once has had a chance to litigate a claim before an appropriate

tribunal usually ought not to have another chance to do so.'"[39]  In the Third Circuit, "a

party seeking to invoke *res judicata* must establish three elements:  (1) a final judgment on

the merits in a prior suit involving (2) the same parties or their privies, and (3) a

subsequent suit based on the same cause of action."[40]

The Third Circuit has defined "cause of action" to be tied to "essential similarity

of the underlying events giving rise to various legal claims" rather than "resting on

specific legal theories."[41]  As held by the Third Circuit in another case:

> The instant case presents an excellent example of one of the
> things these rules were designed to avoid.  As pointed out
> above, the acts complained of and the demand for recovery
> are the same.  The only thing that is different is the theory of
> recovery.  The same witnesses and documents will be
> necessary in the trial in both cases.  No material fact is alleged
> in action No. 1 that was not alleged in action No. 2, save the
> allegations of conspiracy.  Everything that plaintiff was
> entitled to ask for from defendant was included in action No.
> 2.[42]

The Third Circuit has held that there is not one test for determining what constitutes

identity of "cause of action" but instead the Court should focus on the "central purpose

---

[39] *In re AMC Investors, LLC*, 524 B.R. 62, 71 (Bankr. D. Del. 2015) (*quoting* 47 Am.Jur.2d Judgments § 464).

[40] *McLaughlin v. Bd. Of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 686 F. App'x 118, 121 (3d Cir. 2017) (citing *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008).

[41]  *Davis v. U.S. Steel Supply, Div. of U.S. Steel Corp.*, 688 F.2d 166, 171 (3d Cir. 1982) (citations omitted).

[42]  *Williamson v. Columbia Gas & Elec. Corp.*, 186 F.2d 464, 470 (3d Cir. 1950).

of the doctrine of *res judicata*" which requires a plaintiff to "'present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.'"[43] Here, all the transfers from the Debtor to RLF were included in the Original Complaint and voluntarily dismissed *with prejudice* by the Trustee, the Trustee now seeks to revive causes of action related to the exact same transaction under a different legal theory, which is what *res judicata* is designed to prevent.

Here, the Stipulation of Dismissal was a final judgment on the merits of the Trustee's claims to recover the Payments made to RLF, other than the Chapter 7 Retainer. The Stipulation of Dismissal was entered into by identical parties in interest, RLF and the Trustee; and the Amended Complaint is based on the same cause of action.[44]  As a result, it would be futile for the Court to allow the Trustee to amend the Complaint.

### b.  Prejudice to RLF

RLF also alleges that it reasonably relied on the Stipulation of Dismissal, including when RLF drafted its answer and participated in mediation.  The Trustee responds that RLF knew of the transfers between itself and the Debtor and cannot now be surprised by the assertion of these claims.

---

[43]  *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984) (*quoting* 1B J. Moore & J. Wicker, Moore's Federal Practice ¶ 0.410[1], at 359 (2d ed. 1983)).

[44]  *Davis v. U.S. Steel Supply, Div. of U.S. Steel Corp.*, 688 F.2d at 171 (holding that "res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims . . . ."(citations omitted)); *Williamson v. Columbia Gas & Elec. Corp.*, 186 F.2d 464, 470 (3d Cir. 1950).

*Cornell & Co., Inc. v. Occupational Safety and Health Review Commission*, the Third Circuit Court of Appeals, in holding that "the Commission abused its discretion in allowing the Secretary of Labor . . . to amend twice," found that the amendment "changed the legal and factual matters in dispute."[45]  There, Cornell, a steel construction company, was fined for erecting a steel flare structure and a steel frame without using the required temporary flooring for a "tiered building."[46]  The Secretary later moved to add violations of certain code sections requiring safety belts.[47]  The request was granted.[48]  The Third Circuit Court of Appeals reversed stating that "[w]hen the Secretary moved to amend the complaint . . . months after the inspection and just before the hearing, the legal and factual matters in dispute changed drastically. . . [as] the inquiry suddenly shifted to whether that part of the structure . . . was sufficiently secure . . . to permit the workers to attach their safety belts to it."[49]

"Courts have denied a request for leave to amend when both discovery would need to be reopened and a new trial date would need to be set, and when the opposing party would suffer 'severe, irremediable prejudice' if leave was granted."[50]

---

[45]  573 F.2d 820, 824 (3rd Cir. 1978).

[46]  *Id.* at 821-22.

[47]  *Id.* at 822.

[48]  *Id.*

[49]  *Id.* at 824.

[50]  *In re Mortgage Lenders Network, USA, Inc.*, 395 B.R. at 878 (citations omitted).

In contrast, "courts have granted leave to amend when the non-moving party would suffer no prejudice because no new facts or additional discovery was required."[51] However, even if the non-moving party may be prejudiced, courts have granted leave to amend, "as long as the non-moving party would not be overly prejudiced."[52]  In fact, the Third Circuit previously held that "[t]he need for additional discovery does not conclusively establish prejudice."[53]

For instance, in *In re Mortgage Lenders Network, USA, Inc.*, Judge Walsh granted plaintiff's motion to amend although a trial date had already been set.[54]  There, plaintiff sought to add an unjust enrichment claim to its breach-of-contract claim based on the same facts.[55]  The plaintiff represented it did not intend to conduct further discovery on the issue.[56]  With respect to undue prejudice, Judge Walsh held that "even if [Defendant] does need to conduct additional discovery, I do not think that the possibility will cause undue prejudice . . . ."[57]  The Court concluded, "the level of hardship that may be placed on [Defendant] is not high enough to justify a denial of leave to amend."[58]

---

[51]  *Id.* (citations omitted).

[52]  *Id.* (*citing Usery v. Marquette Cement Manufacturing Co.*, 568 F.2d 902 (2d Cir. 1977)).

[53]  *Id.* at 879 (citing *Dole v. Arco Chemical, Co.*, 921 F.2d 484, 488 (3d Cir. 1990)).

[54]  395 B.R. 871 (Bankr. D. Del. 2008).

[55]  *Id.* at 875.

[56]  *Id.* at 878.

[57]  *Id.*

[58]  *Id.* at 879.

In *In re Fleming Companies, Inc.*, the post-confirmation trust established under the debtors' Chapter 11 plan sought leave to amend "to modify language in its turnover of property count and to add a new claim for breach of contract in violation of the automatic stay."[59]    Defendants objected arguing that they would have asked "different and additional questions of at least eight witnesses already deposed."[60]    The Plaintiff disagreed arguing that "it would not be difficult to conduct discovery on the limited issue of additional damages . . . ."[61]    Judge Walrath, in agreeing with the plaintiff, found, "the facts and circumstances relating to the proposed amendments are closely intertwined with the allegations set forth in the original complaint . . . [and] the plaintiff is not asserting a new count with unrelated facts that would require the parties to start discovery anew."[62]

However, in the case *sub judice*, formal discovery has not commenced nor has a trial date been set.  However, the prejudice would turn on the worth of the Stipulation of Dismissal which stated that the "remaining issue" would be the Fourth Claim of the Original Complaint, which states:

> Given the Defendant received a Chapter 11 Retainer of $100,000 and subsequently received another $242,105.91 in

---

[59]  323 B.R. 144, 147 (Bankr. D. Del. 2005).

[60]  *Id.* at 148.

[61]  *Id.*

[62]  *Id.* at 149.

> the ninety days prior to the Petition Date, the Chapter 7
> Retainer is excessive.[63]

The prejudice herein comes from the reliance of RLF on the Stipulation of Dismissal which limited the dispute to $75,000. RLF should be able to rely on a Stipulation of Dismissal for the four Payments, regardless of the legal theory expounded by the Trustee. Thus, the Court finds that RLF would be unduly prejudiced by the Amended Complaint.

### c. Undue Delay

RLF alleges that the Trustee's delay is over 13 months between the Original Complaint and the Motion to Amend is undue. The Trustee responds that the Motion to Amend comes before any formal discovery or a trial being set, as such, the delay does no harm.

Although delay alone is not sufficient to deny leave to amend, "at some point, the delay will become 'undue,' placing an unfair burden on the court, or will become prejudicial, placing an unfair burden on the opposing party."[64] The Court explained that "[d]elay may become undue when a movant has had previous opportunities to amend a complaint."[65] The Court held, in affirming the District Court's denial of plaintiff's post-summary-judgment motion to amend, that "the motion was filed three years after the

---

[63] Original Complaint at ¶ 62. *See also* Motion to Amend at ¶ 8 ("As a result of the dismissal, the *remaining issue* was whether the $75,000 retainer paid to the Defendant for filing the Chapter 7 petition was reasonable." (emphasis added)).

[64] *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (citation omitted).

[65] *Id*. (citation omitted).

24

complaint was filed" and "the factual information on which the proposed amendment relied was known almost two-and-a-half years before plaintiffs sought leave to amend."[66]

Other courts have reached similar conclusions.  For instance in *Lorenz v. CSX Corp.*, the Third Circuit, in affirming the District Court's denial of plaintiff's motion to amend, found undue delay mainly because "most of the facts were available to plaintiff . . . before she filed her original complaint . . . [and because plaintiff] had numerous opportunities to correct any deficiencies in her . . . claim but failed to take advantage of them."[67]

Similarly in *Panetta v. SAP America, Inc.*, plaintiff sought leave to amend to add two new counts, which were based on the same facts as the original complaint.  The Third Circuit, in affirming the District Court's denial of the motion, stated "we agree with the District Court that such claim was known to Panetta early on in this litigation because the cause of action arises out of the same set of facts as the breach of contract claim."[68]

Similar to the fact of *Panetta*, the causes of action the Trustee seeks to add in the Amended Complaint arise out of the same facts and circumstances as the causes of actions dismissed in the Stipulation of Dismissal, the Trustee knew about all the transfers between the Debtor and RLF and could have sought recovery of those transfers under Section 329 of the Bankruptcy Code at the time of the Original Complaint.  The Trustee

---

[66]  *Cureton*, 252 F.3d at 273.

[67]  1 F.3d 1406, 1414 (3d Cir. 1996).

[68]  294 Fed.Appx. 715, 716 (3d Cir. 2008).

has not made any justification for the delay in adding transfers to his Section 329 Claim.[69]
As such, the Court also denies the Motion to Amend based on undue delay.[70]

### d. Bad Faith

RLF contends that the Amended Complaint is also filed in bad faith after the Stipulation of Dismissal, mediation, and thirteen months. RLF asserts that the Trustee is seeking to unfairly delay the resolution of this proceeding, impose additional expenses on RLF and create potential settlement leverage. The Trustee refutes these claims. The Trustee asserts that these fees are not governed by Section 6.12 of the APA and these claims were only added after the Trustee made multiple formal and informal attempts to resolve these claims.

---

[69] In the Motion to Amend, the Trustee states that the "proposed amended complaint is offered in good faith, and does not create any undue delay or prejudice to the Defendant." Motion to Amend at ¶ 20. There is no further discussion of the delay in bringing the Motion to Amend or the reasons for now asserting the additional Transfers in the Amended Complaint. In *Coventry v. U.S. Steel Corp.*, the Third Circuit Court of Appeals also indicated how important it is for a movant to provide a reason for not seeking an amendment earlier.

> It is certainly not inconceivable to us that instances could occur in which the failure to make a timely motion to amend a complaint would place an unwarranted burden upon a trial court, or be prejudicial to the party opposing the motion. In such circumstances, however, the obligation of the trial court in its disposition of the motion is to articulate the imposition or prejudice caused by the delay, and to balance those concerns against the movant's reason for delay in asserting the motion.

856 F.2d 514, 520 (3d Cir. 1988).

[70] *Cureton*, 252 F.3d at 273 (citations omitted) ("Delay may become undue when a movant has had previous opportunities to amend a complaint. . . . Thus, while bearing in mind the liberal pleading philosophy of the federal rules . . . the question of undue delay requires that we focus on the movant's reasons for not amending sooner.").

"As with undue delay, in assessing bad faith, courts look to the reasons as to why a party did not seek to amend earlier."[71]

As the Court finds that the amendments would be futile, are prejudicial to RLF, and after undue delay, it is not necessary for the Court to analyze whether the Trustee seeks these amendments with bad faith. As such, the Court does not make a findings as to bad faith.

### iv.    2016 Claim and Creditor Claim in Amended Complaint

As noted above, the Trustee also seeks to amend the Original Complaint to add the 2016 Claim and the Creditor Claim.

The Trustee alleges in the Amended Complaint that RLF only disclosed the Chapter 7 Retainer and did not disclose the other Payments totaling $242,105.91. As a *prima facie* pleading requirement, the Trustee did not seek any relief in connection with these allegations and as such, this claim would fail on its face. However, that aside, all of the Payments to RLF were included in the Original Complaint, furthermore, the Payments were also listed in the SOFAs. As such, the Trustee had actual knowledge of these Payments. Furthermore, the 2016 Claim fails because such amendment would be futile as claim preclusion would bar the inclusion of this claim (as this would be an additional legal theory for the same Payments in the Original Complaint and, thus, barred by the Stipulation of Dismissal along with the theory of *res judicata*). There was

---

[71] *In re Mortgage Lenders Network, USA, Inc.*, 395 B.R. at 879 (citation omitted).

no justification why this claim could not have been brought in the Original Complaint and is, thus, unduly delayed.

Similarly, the Creditor Claim, as a *prima facie* pleading requirement, does not seek any relief.  A statement that RLF was a creditor on the Petition Date, yet such claim was not listed in the Schedules is conclusory at best.  There is no allegation that RLF sought recovery or was conflicted.  As such, it does not appear that the Amended Complaint seeks relief for such (alleged) misdeed.  In addition, such amendment would be futile as barred by *res judicata* and is also unduly delayed and could have been included in the Original Complaint, for the reasons set forth above.

 *iv.* *Conclusion*

As set forth above, the Court finds that the (proposed) amendments would be futile and ultimately barred by claim preclusion standards.  The Court also finds that such (proposed) amendments would be unduly prejudicial to RLF and there was undue delay in bringing such amendments.  As a result, the Court will deny the Motion to Amend.

## C.  Judgement on the Pleadings

As noted above, the Motion for Judgement on the Pleading turns on the interpretation of the APA, discussed more fulsomely below.

### i.    *Standard of Review*

The standard for a Rule 12(c) motion is the same as the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.[72] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'"[73] At this stage in the proceeding, it is not the question of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[74] Since the *Twombly* and *Iqbal* decisions, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading."[75] This new standard requires "a plaintiff to plead more than the possibility of relief to survive a motion to dismiss."[76] It is insufficient to provide "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."[77] Under the heightened standard, a complaint "must contain either direct or indirect allegations respecting all the material elements necessary to sustain recovery under some *viable* legal theory."[78] The Court, in

---

[72] *In re Fedders North America, Inc.*, 422 B.R. 5 (Bankr. D. Del. 2010) (*citing In re G–I Holdings, Inc.*, 328 B.R. 691, 693–94 (D. N.J. 2005); *Children's Seashore House v. Waldman*, 197 F.3d 654, 657 n. 1 (3d Cir. 1999)).

[73] *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).

[74] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), abrogated on other grounds by, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982); *see also Rosener v. Majestic Mgmt., Inc.* (*In re OODC, LLC*), 321 B.R. 128, 134 (Bankr. D. Del. 2005).

[75] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[76] *Id.*

[77] *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

[78] *Twombly*, 550 U.S. at 562.

order to determine whether a claim meets this requirement, must "draw on its judicial experience and common sense."[79]  In *Fowler*, the Third Circuit articulated a two-part analysis to be applied in evaluating a complaint.[80]  First, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."[81]  Second, the court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"[82]

### ii.    Parties' Arguments

RLF asserts that, as provided under Section 329, the Trustee must demonstrate (among other things) that: (i) the amounts paid to RLF exceeded the reasonable value of its services; and (ii) any amounts deemed excessive by the Court would have been property of the estate if not earlier paid to RLF.  RLF asserts that the $75,000 paid to RLF in connection with the Debtor's Chapter 7 filing would never be property of the estate and, therefore, the Trustee does not have standing to bring this cause of action.

The Trustee responds that the Rule 2016 Disclosure filed by RLF which states that the fees of $75,000 were paid by the Debtor.[83]  The Trustee asserts that the $75,000 paid to RLF was paid from the Debtor's account and were property of the Debtor prior to being paid to RLF.  Furthermore, the Trustee asserts that the funds paid to RLF were from the

---

[79] *Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 34 (Bankr. D. Del. 2011).

[80] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

[81] *Id.*

[82] *Id.* at 211.

[83] Bankr. D.I. 2 (*Disclosure of Compensation of Attorney for Debtor*).

"Excluded Bank Account" which was defined as "that certain bank account located at PNC Bank, with the name Equinox Payments, LLC on the bank account and identified by account number 80-2659-4405."[84]  "Excluded Assets" were listed in Section 2.02 of the APA and specifically included the Excluded Bank Account.[85]  Furthermore, Section 2.04 of the APA defined "Excluded Liabilities" as "any Liabilities of Seller arising or incurred in connection with the negotiation, preparation, investigation and performance of this Agreement, the other Transaction Documents and the transaction contemplated hereby and thereby, including fees and expenses of counsel, accountants, consultants, advisers and others."[86]  The Trustee continues that Section 2.05 of the APA states that the aggregate purchase price paid by Buyer to PNC Bank was a payment made on behalf of the Debtor for amounts the Debtor owed to PNC Bank.[87]  The Trustee continues that Section 6.12 of the APA states that the amounts advanced under the Cash Burndown Schedule are included in the aggregate purchase price.[88]  The Trustee continues that Section 9.01 of the

---

[84]  APA, Art. 1 at p. 5.  This contention in the Trustee's brief is contradicted by the Trustee's allegations in the Original Complaint and the proposed Amended Complaint that identifies that the funds were paid from account number 8026581786 *not* 80-2659-5504.  *Compare* Adv. D.I. 1 (Complaint) at Exh. A *and* Adv. D.I. 27 (*Motion to File an Amended Complaint*), Exh. 1, Exh. A (T*rustee's Amended Complaint for Recovery of Payments* at Exh. A) *with*  D.I. 32 (*Plaintiff's Brief in Opposition to Defendant's Motion for Judgment on the Pleadings and In Reply to Defendant's Opposition to Plaintiff's Motion to File an Amended Complaint*) at ¶ 28 and Exh. C.  As such, based on the allegations in the Trustee's Complaint, it does not appear that the Chapter 7 Retainer was paid from the Excluded Bank Account.  *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (citation omitted)).

[85]  APA, § 2.02(h).

[86]  APA, § 2.04(a).

[87]  APA, § 2.05.

[88]  APA, § 6.12.

APA states that payments to RLF were expenses of the Debtor, were not expenses assumed by the Buyer and were paid by the Seller stating "[e]xcept as otherwise expressly provided herein, all costs and expenses, including fees and disbursements of counsel, financial advisors and accountants, incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses, whether or not the Closing shall have occurred."[89]

RLF replies that APA provides that: (i) the funds earmarked to pay the Chapter 7 Retainer were required to be paid to RLF; (ii) those amounts were paid to RFL as the Chapter 7 Retainer; and (iii) if the Chapter 7 Retainer had not been paid (in whole or part) to RLF, those funds would be the Purchaser's property, not Debtor or estate property. RLF contends that Section 6.12 and the Cash Burndown Schedule control because they specifically address the ownership and use of the Chapter 7 Retainer.

### iii.    Discussion

#### a.    Ownership of the Chapter 7 Retainer if Returned by RLF

As noted above, the Purchaser purchased all of the pre-petition debtor's cash and cash equivalents.  However, Section 6.12 and 9.12 of the APA contemplate and provide for certain post-closing expenses by the Debtor, including costs and expenses associated with the Debtor's then-anticipated Chapter 7 filing.[90]  Furthermore, Schedule 6.12 to the APA specifically provides for the $75,000 paid to RLF in the Cash Burndown Schedule.

---

[89] APA, § 9.01.

[90] APA, §§ 6.12 and 9.12(b).

Section 6.12 of the APA provides that the parties agreed that the amounts on the Cash Burndown Schedule "will be deemed to be 'net debt' assumed by Buyer, [and] payable to PNC (the "PNC Net Debt") . . . ."[91] Section 6.12 continues that "any underpayment of items set forth in the Cash Burndown Schedule that constitute PNC Net Debt shall be deemed a "Purchase Asset" under the APA.[92]

The Trustee asserts that Section 9.01 of the APA states that the Chapter 7 Retainer is a Seller expense.  However, the prefatory clause to Section 9.01 noted by the Trustee provides "[e]xcept as otherwise expressly provided herein, . . . "[93]  and Section 6.12 and Schedule 6.12 of the APA specifically states that the Chapter 7 Retainer are Purchaser's property.  Section 9.01 continues that "[f]or the avoidance of doubt . . . if Buyer makes available to Seller any capital in connection with [the APA] and the transactions contemplated herein, such capital shall not be used for any purpose set forth in this Section 9.01, except to the extent that such amounts are set forth on the Cash Burndown Schedule."[94]

As Section 6.12 specifically deals with the Chapter 7 Retainer, it must control over Section 9.01.  "As a matter of contract construction, a provision which deals specifically

---

[91]  APA, § 6.12.

[92]  APA, § 6.12.

[93]  APA, § 9.01.

[94]  APA, § 9.01.

with a subject controls over a general provision in the same contract."[95]  Thus, pursuant

to Sections 6.12 and 9.01, the Purchaser provided capital for the purpose of payment of

the Chapter 7 Retainer, among other items on the Cash Burndown Schedule, the Debtor

was prohibited from using the Chapter 7 Retainer "for any other purpose" and the

Chapter 7 Retainer would have been Purchaser property, if not paid to RLF.  Thus, the

2016 Disclosure was correct that the Chapter 7 Retainer was paid by the Debtor, but the

APA provides that such funds were restricted by the Cash Burndown Schedule and

would be Purchaser's property, not the Debtor's, if refunded by RLF through this

litigation.

### b. Standing

The Chapter 7 Retainer, if returned, would be the property of the Purchaser (and

not the Debtor), thus, it must be determined whether the Trustee has standing to pursue

the return of these funds.  The Trustee asserts that the Court may direct return to the

Purchaser of that portion of the Chapter 7 Retainer determined by the Court to be

excessive.

Section 329 of the Bankruptcy Code permits the Court to order the return of funds

paid to counsel that exceeds the reasonable value of services rendered to the estate if the

---

[95] *In re HQ Glob. Holdings, Inc.*, 290 B.R. 78, 82 (Bankr. D. Del. 2003) (citations omitted).  *Capitol Bus Co. v. Blue Bird Coach Lines, Inc.*, 478 F.2d 556, 560 (3d Cir. 1973) (footnote omitted) ("A contract is to be considered as a whole, and, if possible, all its provisions should be given effect; while a contract's provisions must be interpreted with reference to the whole the specific controls the general; and a contract should be construed so as to give effect to its general purpose."). *See also Gulf Oil Corp. v. F. P. C.*, 563 F.2d 588, 601 (3d Cir. 1977) ("We must give effect to this specific provision rather than to the more general language on which Gulf relies.").

funds would have been property of the estate or to such entity that made such payment.[96]

RLF contends that since the Chapter 7 Retainer would be delivered to the Purchaser, and not the Debtor's estate, the Trustee does not have standing to pursue these funds. The Trustee responds Rule 2017 provides for the Court to determine if the Debtor's payment to an attorney, either directly or indirectly, is excessive. The Trustee argues that Rule 2017 contemplates the issue being raised by motion by a party in interest or on the Court's initiative, and thus, the Trustee asserts Rule 2017 does not require that the party in interest be the direct beneficiary of the return of the excess payment. RLF disagrees and replies that the Trustee cannot claim any direct or indirect interest in the funds at issue. Furthermore, RLF asserts that the Trustee did not file a motion under Rule 2017, or even assert a claim under that section in this proceeding.

As a general proposition, the Trustee does not have standing to collect money not owed to the estate.[97] Furthermore, the Trustee does not allege that any of the payments made to RLF that the Trustee seeks in the Amended Complaint would be property of the estate.

Furthermore, as a *prima facie* pleading issue, both the Original Complaint and the Amended Complaint allege that the Payments at issue were made from "Account No.

---

[96] 11 U.S.C. § 329(b).

[97] *Caplin v. Marine Midland Grace Tr. Co. of New York*, 406 U.S. 416, 428 (1972). *In re World Health Alternatives, Inc.*, 385 B.R. 576, 595 (Bankr. D. Del. 2008) (holding that a "bankruptcy trustee does not have standing to assert claims on behalf of an estate's creditors"). *See also In re Gaudette*, 241 B.R. 491, 498 (Bankr. D.N.H. 1999) (holding that "if the cause of action belongs to the estate, the trustee has exclusive standing to assert it; conversely, if the cause of action belongs solely to the creditors, the trustee has no standing to assert it." (citations omitted)).

8026581786"[98] which the Purchaser acquired under the APA (as the only bank account not purchased under the APA was account number 80-22659-4405).[99]

The Trustee argues that RLF has the burden to prove that their fees are reasonable, which is true. However, it is the Trustee's burden to prove standing, which the Trustee has not done. The Original Complaint nor the Amended Complaint allege that the funds would be property of the Debtor's estate if returned, the Trustee did not allege that the funds were transferred from the Excluded Bank Account, and even if they were, the Trustee would not be able to show the Chapter 7 Retainer would be returned to the Debtor's estate because of Section 6.12 and Schedule 6.12 of the APA. Thus, the Court finds that the Trustee does not have standing to pursue the return of the Chapter 7 Retainer.

### iv.    Conclusion

The Chapter 7 Retainer, even if returned, would not be property of the estate pursuant to the APA and thus, the Trustee does not have standing to pursue this cause of action. Thus, the Court will grant the Motion for Judgment on the Pleadings.

## CONCLUSION

As set forth *supra*, the Court will deny the Motion to Amend as futile, unduly prejudicial to RLF, and unduly delayed. The Court will grant the Motion for Judgment

---

[98] Compl. Exh. A; Am. Compl. Exh. A.

[99] *See* APA §§ 2.01 and 2.02. *See also* fn. 84.

on the Pleadings because the Trustee does not have standing to pursue the Chapter 7

Retainer as such funds are specifically set forth as Purchaser's funds in the APA.